IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KELVIN L. BROWN, :

    Plaintiff, :

vs. : CA 12-0419-C

CAROLYN W. COLVIN, :
Acting Commissioner of Social Security,
                                                                  :

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 20 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 22 (order of reference).) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of the parties at the May 13, 2013 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 20 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for
(Continued)

Plaintiff alleges disability due to degenerative disc disease of the lumbar and cervical spine, disc herniations at C3-4 and L4-5, history of abdominal hernia status post repair, and hypertension. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.**
>
> **2. The claimant has not engaged in substantial gainful activity since October 16, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).**
>
> **3. The claimant has the following severe impairments: mild degenerative disc disease of the lumbar and cervical spine, history of abdominal hernia status post repair, and hypertension (20 CFR 404.1520(c)).**

. . .

> Robert J. Zarzour, M.D., an orthopedist, has treated the claimant since March 2006 for neck pain. He noted that results of a cervical spine magnetic resonance imaging (MRI) scan demonstrated a disc herniation at C3-4, and that the claimant was also being treated for temporomandibular joint syndrome and a right eye injury, all of which were incurred as a result of an assault at work. Dr. Zarzour prescribed physical therapy, exercises, and medication. He noted on June 5 that the claimant had to be fit for full duty or he could not work. On August 4, the claimant complained of low back pain radiating to the legs. Dr. Zarzour ordered a lumbar spine MRI scan, which revealed a disc herniation at L4-5 with moderate stenosis. He prescribed a series of epidural steroid injections. The claimant subsequently reported improvement.
>
> On January 25, 2007, Dr. Zarzour reported that the claimant was unable to perform his duties at work due to cervical and lumbar spine injuries with disc herniations.
>
> Dr. Zarzour continued to see the claimant and ordered lumbar spine x-rays on April 1, 2008. The results demonstrated mild degenerative changes. Dr. Zarzour diagnosed chronic pain syndrome. He continued to treat the claimant with pain medications. On September 11, he noted that findings were limited to tenderness with pain with straight leg raise

---

this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

testing. He stated that surgery was not in the claimant's best interest. On that same date, Dr. Zarzour completed a physical capacities evaluation of the claimant on which he estimated that, during an 8 hour workday, the claimant could sit for a total of 4 hours and stand or walk for a total of 1 hour. He indicated that the claimant could occasionally lift and carry 20 pounds, but that he could not perform frequent lifting or carrying. He reported that the claimant was unable to push, pull, or climb, but that he could occasionally bend, squat, crawl, and reach. He noted a moderate restriction against driving and total restrictions against working around unprotected heights or moving machinery. Dr. Zarzour also completed a clinical assessment of pain on which he indicated that the claimant experienced pain which was distracting to adequate performance of daily activities or work, and that medication side-effects were severe and would limit effectiveness due to inattention or drowsiness.

.   .   .

The claimant saw Dr. Zarzour on March 2, 2009, for medication refills. Dr. Zarzour noted pain to palpation and some pain with straight leg raising test.

.   .   .

Elmo D. Ozment, M.D., conducted a consultative examination of the claimant on March 14, 2009. The claimant complained of chronic low back pain, neck pain, stomach problems and hypertension. He stated that his hypertension caused no symptoms. He reported that he used a prescribed cane, but stated that he did not always need it. Dr. Ozment observed that the claimant sat comfortably and that he moved without difficulty although he had some difficulty bending over to tie his shoes. The claimant was able to stoop with some back pain. Lumbar flexion was limited to 60 degrees. Straight leg raise testing was normal. Dr. Ozment diagnosed back pain, status post hernia surgeries, history of neck pain with no objective evidence, and controlled hypertension.

.   .   .

The claimant saw Dr. Zarzour on August 17, 2009, for medication refills. Dr. Zarzour noted mild neck and back pain with some left leg numbness possibly related to tobacco toxicity syndrome. Dr. Zarzour reviewed the physical capacities evaluation and clinical assessment of pain which he completed on September 11, 2008, and stated that there had been no changes since that date.

On January 13, 2010, Dr. Zarzour completed a food stamp office disability report on which he reported that the claimant was unable to work due to disc herniations in the cervical and lumbar spine. The claimant saw Dr. Zarzour on February 17 for medication refills. Dr. Zarzour noted neck pain with extension and low back pain with straight leg raise testing.

3

The claimant was seen at USA Family Physicians on May 6, 2010, and reported occasional periumbilical abdominal pain which was mild to moderate and occurred at random. Dr. Duffy noted the complaints and recommended follow-up with a surgeon should the symptoms become more severe.

**4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).**

. . .

**5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he is limited to occasional climbing of stairs and ramps, bending, stooping, kneeling, crouching, and crawling. He is rarely able to reach overhead. He is unable to climb ladders, ropes, or scaffolds, and is unable to work around unprotected heights or dangerous equipment.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

At the hearing, the claimant testified as follows: He lives with his mother and 23-year-old sister. He was born on April 5, 1964, and is 46 years old. . . . The claimant receives food stamps. He is right-handed. He is using a

cane which was not prescribed. He has used it since 2006. He uses it every other day, mostly for balance when he is dizzy and has aches and pain. . . . He was injured on the job in 2006. He returned to work without being released. He needed further surgery after returning to work. He worked as a deck hand for 9 years. . . . He had surgery for hernia repair. This was his 6th surgery. He began working on boats in 1996. Before that, he worked for Naman's as a butcher. He drew worker's compensation for one year. He settled the case. He received $28,000. The total settlement was $85,000. He receives no on-going medical coverage. He has no medical coverage at this time. His mother pays for his medications and helps with his doctor's visits. He sees Dr. Zarzour every 6 months. He used to see him once a month. . . . He has a herniated disc in his neck and problems with his back. He had hernia surgery in 1998. . . . In 1994, he had hernia surgery. He had 2 hernia surgeries in 2000. They put patches inside. The patches deteriorated and he had to have another repair in 2008. He has had epidurals in his lower back. He had the last one 6 months ago. He has never had back surgery. Dr. Zarzour says it would not help. He has had physical therapy. He takes Lortab, Flexeril, and Ambien. . . . He has drowsiness. . . . He has problems focusing. He is able to walk for 40 minutes to an hour and stand for 1 to 2 hours.[2] He has difficulty sitting due to aches and stiffness. He can sit for 1 hour. He would have difficulty lifting 10 to 15 pounds due to his hernia problems. He has numbness and stiffness in his hands. Sometimes his hands become painful from gripping the cane. . . . The claimant picks up around the house, dusts, and does a little laundry. He goes to the grocery store sometimes. He attends church sometimes. He plays on the computer, watches TV, and reads. Sometimes neighbors come by. The claimant visits his children and 3 grandchildren. . . . He has a driver's license. He can drive. His aunt brought him to the hearing. . . .

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The claimant has mild degenerative disc disease of the lumbar and cervical spine with disc herniations at C3-4 and L4-5. He continues in regular treatment with Dr. Zarzour, who has prescribed medication, physical therapy, and a course of epidural steroid injections for the lumbar spine. The claimant's symptoms have apparently responded well

---

[2] Plaintiff never testified that he can stand for 2 hours; instead, his clear testimony was that he "guessed" he could stand for "about an hour, *too*." (Tr. 54; *compare id. with* Tr. 30.)

to treatment.[3] He sees Dr. Zarzour about every 6 months for medication management, and Dr. Zarzour has advised against surgery. Clinical findings have remained stable and relatively mild, with no neurological deficits and normal electrical studies.

I give substantial weight to the findings of Dr. Zarzour and Dr. Ozment, which reflect that the claimant has mild lumbar and cervical disc disease. However, I give little weight to the physical capacities evaluation and clinical assessment of pain completed by Dr. Zarzour or to his food stamp disability statement. His conclusions are unsupported by any objective medical findings and are in fact inconsistent with his description of symptoms which are provoked only with specific movements such as neck extension and straight leg raising. In fact, Dr. Zarzour specifically described the claimant's neck and back pain as "mild[.]" On one occasion, he noted left leg numbness but was apparently attributing the symptom to "tobacco toxicity syndrome." In any case, the limitations described by Dr. Zarzour in the questionnaire are out of proportion to his reported findings and conclusions and are not considered persuasive.

The claimant could be expected to have difficulty with heavy lifting and strenuous activity, but there is no reason to suppose that he cannot sustain a limited range of light work with restriction to occasional climbing of stairs and ramps, bending, stooping, kneeling, crouching, and crawling; restriction to rare overhead reaching; and total restrictions against climbing ladders, ropes, or scaffolds, and against working [] around unprotected heights or dangerous equipment.

The claimant has a history of abdominal hernias status post multiple surgical repairs. An abdominal CT scan taken in June 2009 demonstrated evidence of prior surgery but was otherwise normal. Primary care physician Dr. Duffy is monitoring the claimant's complaints of abdominal discomfort but is not providing any specific treatment. The claimant described occasional mild to moderate pain to Dr. Duffy. I find that he should avoid lifting more than 20 pounds and limit postural changes as described above, but the evidence does not suggest that his condition is of such severity as to preclude work.

. . .

**6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565).**

---

[3]    This is a particularly curious statement which the ALJ appears to try to "prop up" by noting that plaintiff only visits Dr. Zarzour every six (6) months for "medication management." (Tr. 30.) What the ALJ fails to take account of, however, is plaintiff's testimony that he has no medical coverage and depends upon the financial assistance of his mother to pay for his medication and visit the doctor. (*Compare* Tr. 29 *with* Tr. 50 (plaintiff's testimony).)

. . .

**7.    The claimant was born on April 5, 1964, and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).**

**8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).**

**9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).**

. . .

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as laundry worker (*DOT* No. 302.685-010), with 11,380 jobs existing in the state of Alabama and 915,980 nationally; hand packer (*DOT* No. 559.687-074), with 8,750 jobs existing statewide and 472,900 nationally; and ticket taker (*DOT* No. 344.667-010), with 750 jobs existing statewide and 101,530 nationally. She specified that each of the stated jobs represents light unskilled work at SVP 2.

Pursuant to Social Security Ruling 00-4p, the vocational expert's testimony is consistent with the information contained in the *Dictionary of Occupational Titles*.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant

numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.     The claimant has not been under a disability, as defined in the Social Security Act, from October 16, 2008, through the date of this decision (20 CFR 404.1520(g)).**

(Tr. 26, 26-27, 27, 27-28, 28, 29, 29-30, 30-31, 31, 32 & 32-33 (internal citations omitted; emphasis in original; footnotes added).) The Appeals Council affirmed the ALJ's decision (Tr. 1-4) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant meets this burden, as here, it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education and work history, of engaging in another kind of substantial gainful employment, which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform those light jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether

substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4]

In this case, the plaintiff contends that the ALJ committed the following "combined" error: she "erred by improperly rejecting the opinions of Mr. Brown's treating orthopedic physician, Dr. Zarzour, improperly rejecting the testimony of Mr. Brown as not credible, and improperly determining that Mr. Brown has the residual functional capacity to perform 'light work', a finding which is not supported by linkage to either the medical opinion evidence or reasonable inference drawn from the medical evidence as a whole." (Doc. 15, at 2.)

Prior to considering this "combined" issue, the Court need set forth the proper analysis for consideration of RFC "issues" raised in cases like the instant one. The Eleventh Circuit has made clear that "[r]esidual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Peeler v. Astrue,* 400 Fed.Appx. 492, 493 n.2 (11th Cir. Oct. 15, 2010), citing 20 C.F.R. § 416.945(a). Stated somewhat differently, "[a] claimant's RFC is 'that which [the claimant] is still able to do despite the limitations caused by his . . . impairments.'" *Hanna v. Astrue,* 395 Fed.Appx. 634, 635 (11th Cir. Sept. 9, 2010), quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). "In making an RFC determination, the ALJ must consider all the record evidence, including evidence of non-severe impairments." *Hanna, supra* (citation omitted); *compare* 20 C.F.R. §§ 404.1545(a)(1) &

---

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

9

416.945(a)(1) (2011) ("We will assess your residual functional capacity based on all the relevant evidence in your case record.") *with* 20 C.F.R. §§ 404.1545(a)(3) & 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence.").

From the foregoing, it is clear that the ALJ is responsible for determining a claimant's RFC, a deep-seated principle of Social Security law, 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level under § 404.929 or at the Appeals Council review level under § 404.967, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity."); *see also* 20 C.F.R. § 416.946(c) (same), that this Court has never taken issue with. *See, e.g., Hunington ex rel. Hunington v. Astrue,* No. CA 08-0688-WS-C, 2009 WL 2255065, at *4 (S.D. Ala. July 28, 2009) ("Residual functional capacity is a determination made by the ALJ[.]") (order adopting report and recommendation of the undersigned). The regulations provide, moreover, that while a claimant is "responsible for providing the evidence [the ALJ] . . . use[s] to make a[n] [RFC] finding[,]" the ALJ is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary," and helping the claimant get medical reports from his own medical sources. 20 C.F.R. §§ 404.1545(a)(3) & 416.945(a)(3). In assessing RFC, the ALJ must consider any statements about what a claimant can still do "that have been provided by medical sources," as well as "descriptions and observations" of a claimant's limitations from his impairments, "including limitations that result from [] symptoms, such as pain[.]" *Id.*

In determining a claimant's RFC, the ALJ considers a claimant's "ability to meet the physical, mental, sensory, or other requirements of work, as described in paragraphs (b), (c), and (d) of this section." 20 C.F.R. §§ 404.1545(a)(4) & 416.945(a)(4).

> (b) *Physical abilities*. When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.
>
> (c) *Mental abilities.* When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.
>
> (d)   *Other abilities affected by impairment(s).*   Some medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities. If you have this type of impairment(s), we consider any resulting limitations and restrictions which may reduce your ability to do past work and other work in deciding your residual functional capacity.

20 C.F.R. §§ 404.1545(b), (c) & (d) and 416.945(b), (c) & (d).

Against this backdrop, this Court starts with the proposition that an ALJ's RFC determination necessarily must be supported by substantial evidence. *Compare Figgs v. Astrue,* 2011 WL 5357907, *1 & 2 (M.D. Fla. Oct. 19, 2011) ("Plaintiff argues that the ALJ's residual functional capacity ('RFC') determination is not supported by substantial evidence. . . . [The] ALJ's RFC Assessment is [s]upported by substantial record evidence[.]"), *report & recommendation approved,* 2011 WL 5358686 (M.D. Fla. Nov. 3, 2011), and *Scott v. Astrue,* 2011 WL 2469832, *5 (S.D. Ga. May 16, 2011) ("The ALJ's RFC

11

Finding Is Supported by Substantial Evidence[.]"), *report & recommendation adopted,* 2011 WL 2461931 (S.D. Ga. Jun. 17, 2011) *with Green v. Social Security Administration,* 223 Fed.Appx. 915, 923 & 923-924 (11th Cir. May 2, 2007) (per curiam) ("Green argues that without Dr. Bryant's opinion, there is nothing in the record for the ALJ to base his RFC conclusion that she can perform light work. . . . Once the ALJ determined that no weight could be placed on Dr. Bryant's opinion of [] Green's limitations, the only documentary evidence that remained was the office visit records from Dr. Bryant and Dr. Ross that indicated that she was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication. Thus, substantial evidence supports the ALJ's determination that Green could perform light work."). And while, as explained in *Green, supra*, an ALJ's RFC assessment may be supported by substantial evidence even in the absence of an opinion by an examining medical source about a claimant's residual functional capacity, specifically because of the hearing officer's rejection of such opinion,[5] 223 Fed.Appx. at 923-924; *see also id.* at 923 ("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ."), **nothing** in *Green* can be read as suggesting anything contrary to those courts—including this one—that have staked the position that the ALJ must link the RFC

---

[5] An ALJ's articulation of reasons for rejecting a treating source's RFC assessment must, of course, be supported by substantial evidence. *Gilabert v. Commissioner of Social Security*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. In this case, therefore, the critical question is whether substantial evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC.") (citing *Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005)); *D'Andrea v. Commissioner of Social Security Admin.,* 389 Fed.Appx. 944, 947-948 (11th Cir. Jul. 28, 2010) (per curiam) (same).

assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.[6] *Compare, e.g., Saunders v. Astrue*, 2012 WL 997222, *5 (M.D. Ala. Mar. 23, 2012) ("It is unclear how the ALJ reached the conclusion that Plaintiff 'can lift and carry up to fifty pounds occasionally and twenty-five pounds frequently' and sit, stand and/or walk for six hours in an eight hour workday, [] when the record does not include an evaluation of

---

[6]   In *Green, supra,* such linkage was easily identified since the documentary evidence remaining after the ALJ properly discredited the RFC opinion of the treating physician "was the office visit records from Dr. Bryant and Dr. Ross that indicated that [claimant] was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication." 223 Fed.Appx. at 923-924. Based upon such nominal clinical findings, the court in *Green* found "substantial evidence support[ing] the ALJ's determination that Green could perform light work." *Id.* at 924; *see also Hovey v. Astrue*, Civil Action No. 1:09CV486-SRW, 2010 WL 5093311, at *13 (M.D. Ala. Dec. 8, 2010) ("The Eleventh Circuit's analysis in *Green*, while not controlling, is persuasive, and the court finds plaintiff's argument . . . that the ALJ erred by making a residual functional capacity finding without an RFC assessment from a physician without merit. In formulating plaintiff's RFC in the present case, the ALJ—like the ALJ in *Green*—relied on the office treatment notes of plaintiff's medical providers.").

Therefore, decisions, such as *Stephens v. Astrue*, No. CA 08-0163-C, 2008 WL 5233582 (S.D. Ala. Dec. 15, 2008), in which a matter is remanded to the Commissioner because the "ALJ's RFC determination [was not] supported by substantial and tangible evidence" still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that "substantial and tangible evidence" **must—in all cases—include** an RFC or PCE from a physician. *See id.* at *3 ("[H]aving rejected West's assessment, the ALJ **necessarily had to** point to a PCE which supported his fifth-step determination that Plaintiff can perform light work activity.") (emphasis added).  But, because the record in *Stephens*

> contain[ed] no physical RFC assessment beyond that performed by a disability examiner, which is entitled to no weight whatsoever, there [was] simply no basis upon which this court [could] find that the ALJ's light work RFC determination [was] supported by substantial evidence.  [That] record [did] not reveal evidence that would support an inference that Plaintiff [could] perform the requirements of light work, and certainly an ALJ's RFC determination must be supported by substantial and tangible evidence, not mere speculation regarding what the evidence of record as a whole equates to in terms of physical abilities.

*Id.* (citing *Cole v. Barnhart*, 293 F. Supp.2d 1234, 1242 (D. Kan. 2003) ("The ALJ is responsible for making a RFC determination, and he must link his findings to substantial evidence in the record and explain his decision.")).

13

Plaintiff's ability to perform work activities such as sitting, standing, walking, lifting, bending, or carrying.") *with* 20 C.F.R. §§ 404.1545(b), (c) & (d) and 416.945(b), (c) & (d); *see also Packer v. Astrue,* 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.").

Indeed, the Eleventh Circuit appears to agree that such linkage is necessary for federal courts to conduct a meaningful review of an ALJ's decision. For example, in *Hanna, supra,* the panel noted that

> [t]he ALJ determined that Hanna had the RFC to perform a full range of work at all exertional levels but that he was limited to 'occasional hand and finger movements, overhead reaching, and occasional gross and fine manipulation.' In making this determination, the ALJ relied, in part, on the testimony of the ME. . . .
>
> The ALJ's RFC assessment, as it was based on the ME's testimony, is problematic for many reasons. . . . [G]iven that the ME opined only that Hanna's manipulation limitations were task-based without specifying how often he could perform such tasks, it is unclear how the ALJ concluded that Hanna could occasionally engage in all forms of hand and finger movements, gross manipulation, and fine manipulation. . . .
>
> The ALJ also agreed with the VE's testimony that, under the RFC determination, Hanna could return to his past work. **But this conclusion is not clear from the record.** The VE answered many hypothetical questions and initially interpreted the ME's assessment to mean that Hanna's gross manipulation abilities were unlimited and so, with only a restriction to fine manipulation, he could perform his past relevant work. In a separate hypothetical, the VE stated that a claimant could not return to his past work as a packaging supervisor if restricted to occasional fingering, handling, and gross and fine manipulation. The ALJ also did not include the ME's steadiness restriction in the RFC assessment; and the VE testified that a person restricted to handling that required steadiness would not be able to return to Hanna's past work.
>
> **The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.** The ALJ has not done so here. To the extent the ALJ based Hanna's RFC assessment on hearing testimony by the ME and VE, the assessment is inconsistent with the evidence. The ALJ did not explicitly reject any of either the ME's or VE's testimony or otherwise explain these inconsistencies, the resolution of which was material to whether Hanna could perform his past relevant

14

> work. **Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review Hanna's case."**

395 Fed.Appx. at 635-636 (emphasis added and internal citations and footnotes omitted); *see also Ricks v. Astrue*, No. 3:10–cv–975–TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) ("'The existence of substantial evidence in the record favorable to the Commissioner may not insulate the ALJ's determination from remand when he or she does not provide a **sufficient rationale to link such evidence to the legal conclusions reached**.' Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow him to explain the basis for his decision.") (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)) (emphasis added); *cf. Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) ("The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.") (citation omitted).

Such linkage, moreover, may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the ALJ's decision. *See, e.g., Durham v. Astrue*, Civil Action No. 3:08CV839-SRW, 2010 WL 3825617, at *3 (M.D. Ala. Sep. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'") (quoting *Hanna*, 395 Fed. Appx. at 636 (internal quotation marks omitted)); *see also id.* at *3 n.4 ("In his brief, the

15

Commissioner sets forth the evidence on which the ALJ could have relied . . . .  There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion].  However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support.  Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct.").

In this case, the Court finds that the ALJ did not completely link her RFC assessment—that is, a limited range of unskilled light work—to specific evidence in the record bearing upon Brown's ability to perform the physical, mental, sensory and other requirements of work because she failed to set forth her reasons for finding that "claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment[]" (Tr. 30; *compare id. with* Tr. 30-31), as more precisely set out hereinafter.[7]

The Eleventh Circuit has consistently and often set forth the criteria for establishing disability based on testimony about pain and other symptoms. *See, e.g., Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted); *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991).

> [T]he claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected

---

[7] The undersigned would note parenthetically that the ALJ's rejection of Dr. Zarzour's PCE and pain assessment findings, in part on the basis that same "are unsupported by any objective medical findings" (Tr. 30), to be curious since plaintiff's C3-4 and L4-5 disc herniations are certainly "objective findings" as they are based upon MRI findings dated August 6, 2006 and February 15, 2006 (*see, e.g.,* Tr. 221).

16

> to give rise to the claimed pain.[8] If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson, supra,* at 1225 (internal citations omitted; footnote added).

"20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms *must* be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote v. Chater,* 67 F.3d 1553, 1561 (11th Cir. 1995) (emphasis supplied). In other words, once the issue becomes one of credibility and, as set forth in SSR 96-7p, in recognition of the fact that a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by objective medical evidence alone, the adjudicator (ALJ) in assessing credibility must consider in addition to the objective medical evidence the other factors/evidence set forth in 20 C.F.R. § 404.1529(c). More specifically, "[w]hen evaluating a claimant's subjective symptoms, the ALJ *must* consider the following factors: (i) the claimant's 'daily activities; (ii) the location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (iii) [p]recipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the [claimant took] to alleviate pain or other symptoms; (v) treatment, other than medication, [the claimant] received for relief . . . of pain or other symptoms; and (vi) any measures the claimant personally used to relieve pain or other symptoms.'" *Leiter v. Commissioner of Social Security*

---

[8] "Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw reasonable conclusion about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity." SSR 88-13.

*Administration*, 377 Fed.Appx. 944, 947 (11th Cir. May 6, 2010) (emphasis supplied), quoting 20 C.F.R. §§ 404.1529(c)(3); *see also* SSR 96-7p ("In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence . . . that the adjudicator *must* consider in addition to the objective medical evidence when assessing the credibility of an individual's statements[.]" (emphasis supplied)).

In this case, the ALJ clearly recognized that plaintiff's impairments meet the pain standard (*see* Tr. 30 ("[T]he undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]")) yet found that his subjective pain (and medication side effects) complaints were not entirely credible (*see id*. ("[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.")). However, the ALJ, in making her credibility finding, *see Foote, supra,* at 1561, considered only the objective medical evidence of record but did not consider the other factors/evidence set forth in 20 C.F.R. § 404.1529(c) (*see* Tr. 30-31). This was error. In other words, in this decidedly "pain" case,[9] *Foote, supra,* at 1562 ("'[W]here proof of a disability is based upon subjective evidence and a credibility determination is, therefore, a critical factor in the [Commissioner]'s decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'"), the ALJ's adverse credibility determination is not

---

[9] Indeed, the primary diagnosis made by the consultative examiner, Dr. Elmo D. Ozment, was back pain. (Tr. 231.)

supported by substantial evidence because she failed to utilize any of the many reasons at her disposal for finding Brown's testimony not fully credible,[10] including daily activities, *see Wheeler v.* Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986) (noting activities such as caring for personal needs, visiting a sick aunt, helping his spouse around the house, and carrying out the garbage supported the ALJ's finding that the claimant did not suffer disabling pain), sporadic use of narcotic pain medication, *see Davis v.* Astrue, 2011 WL 3875620, *8 (M.D. Ala. Aug. 31, 2011) ("The court finds the ALJ's decision to discount plaintiff's testimony to be minimally adequate. He stated at least one specific reason—*i.e.*, that plaintiff's 'use of medication does not suggest the presence of any impairment(s) which is more limiting than found in this decision.' The ALJ's failure to cite the evidence in support of this stated reason within his credibility analysis is not the best practice, and it needlessly complicates review. However, it is apparent from the decision as a whole that the ALJ here refers to plaintiff's sporadic use of narcotic pain medication, described fully within the ALJ's summary of the evidence and supported by evidence of record. Accordingly, the court finds without merit plaintiff's contention that the ALJ's credibility determination is flawed as to his testimony of disabling pain." (internal citations and footnote omitted)),[11] and the like.[12]

---

[10] The ALJ simply did not make a finding on the credibility of plaintiff's statements "based on a consideration of the entire case record[,]" as she indicated would happen (Tr. 29) because that would have required her to consider at length plaintiff's daily activities; the type, dosage, effectiveness, and side effects of his medications; other treatment he received for pain; the location, duration, frequency, and intensity of pain and other symptoms, etc. *Compare* 20 C.F.R. § 404.1529 *with* SSR 96-7p.

[11] The undersigned does not mean to suggest that Brown uses his pain medication sporadically as there is no indication that he does anything other than take the medication, Lortab and Flexeril, as prescribed. Lortab is indicated "for the relief of moderate to moderately severe pain[,]" http://www.drugs.com/pro/lortab/html (last visited May 17, 2013 2:15 p.m.) and Flexeril "is indicated as an adjunct to rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions." http://www.rxlist.com/flexeril-drug/indications-dosage/html (last visited May 17, 2013 2:19 p.m.)

(Continued)

Because the ALJ's credibility determination is flawed, this Court is unable to find that the ALJ provided the linkage necessary to substantiate her RFC determination. Accordingly, this cause is due to be remanded to the Commissioner of Social Security for further proceedings not inconsistent with this decision.

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 23rd day of May, 2013.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

One of the common side effects associated with both drugs is drowsiness, *compare* http://pain.emedtv.com/lortab/lortab-side-effects.html (last visited May 17, 2013 2:17 p.m.) *with* http://www.rxlist.com/flexeril-drug.html (last visited May 17, 2013 2:19 p.m.) consistent with Brown's testimony at the hearing (*see* Tr. 54 ("[J]ust drowsiness, and, you know, . . . just not being focused a lot. And real bad drowsiness[.]"). In addition to the ALJ failing to consider any of the § 404.1529 relative to plaintiff's pain complaints, she "never made a finding regarding whether the side effects of Claimant's medication might conceivably be disabling." *Preast v. Commissioner of Social Security*, 2009 WL 3028315, *18 (M.D. Fla. Sept. 16, 2009) (citations omitted). On remand, the ALJ can address this additional issue.

[12]   Such credibility determination should take the shape of that noted in *Leiter, supra*, 377 Fed. Appx. at 948 (daily activities), or *Witherspoon v. Astrue*, CA 12-0220-C, Doc. 21, at 7-9 (no pain medication, etc.).